Patrick j. Cerillo, Esq.
Patrick J. Cerillo, LLC
4 Walter E. Foran Blvd., Suite 402
Flemingtonm NJ 08822
Attorney ID No. 01481-1980
T: (908) 284-0997
F: (908) 284-0915
Attorney for Plaintiff

Christos Kambanis
Defendant Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| Malibu Media LLC, | Case No. 2:18-cv-00203-WHW-CLW |
| Plaintiff; | |
| vs. | ANSWER |
| Christos Kambanis | with Affirmative Defenses |
| Defendant. | |

For his answer to the "Amended Complaint – Action for Damages for Property Rights Infringement filed by the plaintiff Malibu Media LLC, defendant Christos Kambanis says that:

1. Defendant admits that Paragraph 1 of the complaint purports to set forth an action for copyright infringement under the United

States Copyright Act and seeks related relief, but defendant Specifically denies that plaintiff is entitled to such relief.

2. Defendant denies the allegations in Paragraph 2 and further asserts that the IP address of the alleged infringer, identified in the Complaint as "John Doe Subscriber Assigned IP address 69.117.41.213", is demonstrably different from defendant's IP address 69.114.91.119 (Defendant's Exhibit A & B), as verified by 6 different IP identification web sites.

Since the IP address of the alleged infringer does not match the IP address of the defendant, Defendant asserts that he has been misidentified as the alleged infringer.

Further, Defendant asserts that there is no need for anyone to infringe Plaintiff's copyrights because Plaintiff makes their content available for sums that make it unnecessary to infringe Plaintiff's rights. If one visits Plaintiff's main website:

www.x-art.com

And clicks the "join now" button, one will be taken to a website that lists a 1-year membership for just $100, Defendant's Exhibit C.

Defendant asserts that Plaintiff's pricing model is such that one need not resort to a 16-month long campaign to download 13 movies when as evidenced in Defendant's Exhibit C one can legally access Plaintiff's entire library of movies for the low price of $100.

[Pleading title summary] - 2

Defendant asserts that based on a search of The U.S. Copyright Office's online catalog, Defendant has determined that Plaintiff has produced and registered 870 adult movies, Defendant's Exhibit D.

Defendant asserts that Defendant's internet connection speed is over 200 megabits per second, Defendant's Exhibit B. Defendant further asserts that this screenshot of a speed test of Defendant's internet speed confirms that Defendant's IP address is 69.114.91.119 and thus different from the alleged infringer's IP address of 69.117.41.213.

Defendant asserts that an internet connection speed of 200 megabits per second equates to over 2 terabytes of data per day, Defendant's Exhibit E.

Defendant asserts that at 2 terabytes per day download speed, if one were a consumer of the content Plaintiff produces, one could legally download the entirety of Plaintiff's library of movies in less than a week, for the $100 per year subscription fee Plaintiff charges for membership to their website.

Defendant asserts that based on the above no reasonable jury is likely to believe the allegation that one would spend 16 months illegally downloading 13 movies when one could just spend $100 to download 870 movies inside of a week.

3. For his answer to Paragraph 3 of the complaint, defendant denies that Plaintiff had valid copyright registrations to the allegedly infringed works and further asserts that Plaintiff has lost its ability to sue for damages because Plaintiff has lied and doctored the evidence it has presented to this court.

Plaintiff's exhibit B claims that the movie "An Afternoon Inside Kim", has a date of first publication of June 1 2017, yet their website has listed the same movie, Defendant's Exhibit F, as being available on May 25 2017.

Plaintiff's Exhibit B claims that the movie "Hot and Wet" was first published on January 6 2018 yet Plaintiff's website lists the date of publication as December 18 2017, Defendant's Exhibit G.

Plaintiff's Exhibit B claims that the movie "Your Luckiest Night" was first published on December 15 2017 yet Plaintiff's website lists the date of publication as December 4 2017, Defendant's Exhibit H.

Plaintiff's Exhibit B claims that the movie "Into The Lion's Mouth" was first published on November 25 2017 yet Plaintiff's website lists the date of publication as November 20 2017, Defendant's Exhibit I.

Plaintiff's Exhibit B claims that the movie "The Tightest Blonde" was first published on October 28 2017 yet Plaintiff's website lists the date of publication as October 16 2017, Defendant's Exhibit J.

Plaintiff's Exhibit B claims that the movie "Hot Euro Brunettes" was first published on October 20 2017 yet Plaintiff's website lists the date of publication as October 11 2017, Defendant's Exhibit K.

Plaintiff's Exhibit B claims that the movie "Born To Be Wild" was first published on August 25 2017 yet Plaintiff's website lists the date of publication as August 14 2017, Defendant's Exhibit L.

Plaintiff's Exhibit B claims that the movie "Pure Gold" was first published on August 23 2017 yet Plaintiff's website lists the date of publication as August 3 2017 Defendant's Exhibit M.

Plaintiff's Exhibit B claims that the movie "Want to Fuck My Wife" (apologies to the court for the language, but that is the title of the movie) was first published on February 10 2017 yet Plaintiff's website lists the date of publication as February 7 2017, Defendant's Exhibit N.

Defendant asserts that for 9 of the 13 movies allegedly infringed upon the document offered as evidence in support of the alleged infringement contains factually inaccurate statements as easily verifiable by visiting Plaintiff's website.

If Plaintiff's investigator(s) cannot accurately determine date of first publication for 9 of the 13 movies allegedly infringed upon, then how can they be trusted to determine the IP address of the alleged infringer?

Defendant also asserts that one cannot even accept a claim of "typographical error" because as Plaintiff claims in Paragraph 6, Plaintiff has experience filing over 1000 lawsuit, allegedly. One would think that if after investigating over 1000 cases of alleged infringement, Plaintiff's investigators still can't determine the proper date of first publication then Plaintiff's investigators are not reliable enough to competently perform an investigation into alleged infringement and thus the alleged evidence they collected is not trustworthy.

Defendant also asserts that Plaintiff is acting unethically by claiming copyright to works that were allegedly downloaded prior to their date of registration, meaning they were not protected during the act Defendant is accused of doing.

"Hot and Wet", "Your Luckiest Night", "Hot Euro Brunettes", "Definitely Not So Shy", "An Afternoon Inside Kim", and "Superhot Sexting" all have a "Most Recent Hit" before the date of registration.

4. For his answer to Paragraph 4 of the complaint, defendant admits that this Court has jurisdiction over the subject matter of copyright infringement actions, but denies that plaintiff is entitled to any such relief.

5. For his answer to Paragraph 5 of the compliant, defendant admits he lives within this court's jurisdiction, denies the rest of the allegations and further asserts that no evidence has been presented in support of the claim that "Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases"; in fact the supposed technology hasn't even been named much less any proof offered as to its accuracy and further reasserts that the evidenced referenced in Defendant's Paragraph 2 (above) completely disproves the allegations made by defendant in Paragraph 5 of the complaint with the exception of whether this court has jurisdiction of a party living in the State of NJ.

Defendant reasserts the arguments laid out in Respondent's Paragraph 2 above regarding practicality of downloading 13 movies over a 16-month period from legally questionable sources versus simply paying $100 for a legal, unlimited 1-year subscription to Plaintiff's website.

6. For his answer to Paragraph 6 of the compliant, Defendant denies this claim and asserts that a search of the ECF system, Defendant's Exhibit O, shows 74 open cases and 635 closed cases and a review of the closed cases show that many of them were closed within months of a suit being filed, meaning they were most likely either dismissed or a settlement was negotiated, which means that in most

[Pleading title summary] - 6

cases the accuracy of the as yet to be named "geolocation technology" has rarely been tested in court all the way to a jury verdict.

Defendant further asserts that the contrast between Plaintiff's claim of over 1000 cases filed and what ECF reports as active is further proof that complain if faulty and that Plaintiffs have used questionable assertions in this Complaint in order to bolster a weak case.

With respect to the claim that "the geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of cases", Defendant denies this allegation and reasserts the applicable parts of Defendant's answer Paragraph 5, as well as the paragraph above, and further asserts that even if this claim could be proven, a 1% margin of error out of "over 1000 cases" still means that over 10 defendants would be wrongly sued and further asserts that since there are, according to the US Census Bureau, about 3.2 million households within the District of NJ (Defendant's Exhibit P) this means that by the Plaintiff's own assertion the technology, if proven to be as accurate as Plaintiff claims, would lead to about 32000 people wrongfully accused of, and sued for, copyright infringement.

   7. For his answer to Paragraph 7 of the complaint, defendant admits that his current residence is within the territorial jurisdiction of this Court, but denies the remaining allegations, and leaves plaintiff to its proofs.

   8. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and

therefore, denies those allegations.

9. For his answer to Paragraph 9 of the complaint, defendant admits he lives at the address listed.

## Factual Background

I. Defendant denies the allegations in Paragraph I and further asserts that there is no such thing as the "BitTorrent File Distribution Network", BitTorrent is a protocol, a method for distributing data, a fact that Plaintiff acknowledges in Paragraph 10 of the Complaint.

10. Defendant denies the allegation in Paragraph 10 and further asserts that since there are only a handful of peer-to-peer file sharing systems, the claim that BitTorrent is "one of the most common" is intentionally misleading. Defendant further alleges that it is impossible to quantify how many BitTorrent users exist worldwide or even within the court's jurisdiction and thus this claim is meaningless and designed to confuse the court and potential jury as well as lend credence to Plaintiff's poorly prepared Complaint.

11. Defendant denies the allegations in Paragraph 11 and further asserts no evidence has been offered to quantify the popularity of "BitTorrent" or how many users it has. Furthermore, BitTorrent still requires a ".torrent" file in order to work and said files must be hosted on a website somewhere.

These websites are subject to DMCA take down notices and legal action, as evidenced with what happened to the owners of The Pirate Bay years ago or by doing a google search for a torrent file and seeing all the DMCA take-down notices they comply with.

Had Plaintiff really wanted to protect the copyrights they claim they own they could have issued a DMCA notice to whoever was hosting the .torrent file associated with their alleged copyrighted works and put a stop to this activity years ago. Instead it appears that they ran a "honey pot", an operation where they themselves posted copies of their movies in the hope of suing someone and making significantly larger sums of money than they make by selling the $100 per year subscription that membership to their website costs with unlimited downloads.

12. Defendant denies the allegations in Paragraph 12 on the grounds that they misrepresent how BitTorrent works. Defendant asserts that BitTorrent is no different than any other file transmission protocol, such FTP or HTTP, in that they all need to break a file into small pieces known as "packets" for transmission from one computer to another.

13. Defendant denies the allegations in Paragraph 13 and asserts that after any computer receives data packets they are reassembled, including Plaintiff's investigators' computers and the computers of users that use BitTorrent, or any other protocol, for lawful activities, such as any of the hundreds Linux vendors who distribute their software using BitTorrent or any of the Open Source video producers, such as Sintel, Tears of Steel and countless artists others that distribute their movies and music using this technology.

14. Defendant denies the allegations in Paragraph 14 in so far that they are worded in such a way as to imply that this behavior is unique to BitTorrent and to further imply that there is something insidious about this functionality.

15. Defendant denies the allegations in Paragraph 15 in so far that they are worded in such a way as to imply that this behavior is unique to BitTorrent and to further imply that there is something insidious about this functionality.

16. Defendant denies the allegations in Paragraph 16 in so far that they are worded in such a way as to imply that this behavior is unique to BitTorrent and to further imply that there is something insidious about this functionality.

17. Defendant denies the allegations in Paragraph 17, and reasserts Defendant's Answer to Paragraph 2 of the Complaint and further asserts that BitTorrent can use either TCP/IP or UDP and most torrent clients use both.

18. Defendant denies the allegations in Paragraph 18 and further asserts that Paragraph 18 of the Complaint raises a number of questions, among them, where did these pieces come from?

If the allegations in Paragraph 18 were true, which Defendant again denies, and Defendant is not the creator of the content then he must have acquired them somehow.

Did Defendant acquire them legally, from a paid subscription to Malibu Media's website? Did he download them from Plaintiff's investigator's? It is clear from the Complaint that Plaintiff's, through the actions of their investigators, presumably with Plaintiff's blessings, have their hands quite dirty in aiding and promoting this alleged infringing behavior. Further, Defendant asserts that it is quite clear from Defense's analysis of the supporting documents Plaintiff is offering as proof, that Plaintiff's investigators are poorly equipped to carry out an infringement investigation if they can't even determine the correct date of publication 9 out 13 times.

19. Defendant denies the allegations in Paragraph 19 and reasserts Paragraph 3 of Defendant's Answer and further asserts that if Plaintiff's investigators cannot accurately determine the date of publication for 9 out of the 13 allegedly infringed movies then none of the "evidence" they present can be trusted or relied upon.

20. Defendant denies that a full copy of each digital media file was downloaded by Defendant's computer.

Defendant denies the existence of "the BitTorrent file distribution network" and reasserts that there is no such thing as the "BitTorrent File Distribution Network", BitTorrent is a protocol, a method for distributing data, a fact that Plaintiff acknowledges in Paragraph 10 of the Complaint.

Defendant admits to the accuracy of the following claim made in Paragraph 20:

"At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user."

Defendant further asserts that if we take Plaintiff's claim expressed in the statement quoted above as true, which Defendant stipulates is true, then that renders this lawsuit moot.

Defendant asserts that Plaintiff cannot have it both ways, they cannot claim that Plaintiff's copyrighted content was not uploaded to any other BitTorrent user and simultaneously sue Defendant for damages, when by Plaintiff's own admission no uploading took place. If no uploading took place, then investigators could not have possibly have downloaded any copyrighted works from Defendant's computer and Defendant's computer likewise could not have downloaded any copyrighted content.

Defendant further asserts that you cannot have one without the other, if no copyrighted content was uploaded then no copyrighted content could have been downloaded and vice versa.

Defendant asserts that this assertion by Plaintiff raises further doubts as to whether Plaintiff and their investigators can provide trustworthy evidence.

21. Defendant denies the allegations in Paragraph 21 and asserts that the terms "substantially similar" and "strikingly similar" are overly broad terms, that when applied to content of the adult variety effectively means that any two or more movies that depict two or more legally consenting adults engaged in consensual sex acts would be "substantially similar" and "strikingly similar" and thus open to claims of copyright infringement by parties that have no interest in said works.

Defendant further asserts that because of the above argument, adult content of the pornographic type, of which each of Plaintiff's alleged infringed works is, does not qualify for copyright protection, registration status notwithstanding. It is Defendant's contention that because adult movies of the pornographic type depict activities that are a normal part of human function, and in fact are vital to the continued existence of all species, not the least of which is homo sapiens, that they can't meet the minimum standard required for copyright registration which is that they be a "original work of authorship"; sex acts by definition cannot be "original" or "unique" when the same acts have been performed by countless species for countless eons.

Defendant asserts that only the costumes, dialogues, set, lighting, camera work and storyline of such adult content can qualify for copyright protect but since the only real appeal of these movies is the sex acts themselves, any claims of copyright infringement as it relates to the non-sex portions of these movies would be rendered null and void by application of the De minimis Principle.

22. Defendant denies the allegations in Paragraph 22 and reasserts all applicable defenses outlined in Paragraphs 1 through 21, inclusive.

23. Defendant denies the allegations in Paragraph 23 and further asserts that the claims in this paragraph directly contradict Plaintiff's claim made in Paragraph 20:

"At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user."

Defendant reasserts all applicable defenses outlined in Paragraphs 1 through 22, inclusive.

24. Defendant denies the allegations in Paragraph 24 and further asserts that the claims in this paragraph directly contradict Plaintiff's claim made in Paragraph 20:

"At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user."

Defendant reasserts all applicable defenses outlined in Paragraphs 1 through 23, inclusive.

25. Defendant denies the allegations outlined in Paragraph 25 pertaining to Defendant being a "habitual copyright infringer" and reasserts all applicable defenses outlined in Paragraphs 1 through 24, inclusive.

Defendant further asserts that using BitTorrent is not in and of itself a legally actionable act and further asserts that BitTorrent is widely used within the Open Source Community as a reliable way to distribute and acquire open source software and content, with high profile examples including RedHat Linux, Fedora, Suse, Open Suse Leap and Tumbleweed, Ubuntu and derivatives, Debian and derivatives, Manjaro, Sintel, Big Buck Bunny, Tears of Steel, as well as a multitude of independent artists that choose to release and distribute their work under a GPL, BSD, MIT, Creative Commons or other similar such licenses.

26. Defendant denies the allegations in Paragraph 26.

27. Defendant denies the allegations in Paragraph 27, for the reason that Defendant is not privy to the retainer agreement signed between Plaintiff and Plaintiff's attorney and thus doesn't know what compensation Plaintiff is obligated to pay Plaintiff's attorney and Defendant denies the allegations in Paragraph 27 because the term "reasonable fee" cannot be adequately defined, what may be considered a "reasonable fee" to one person may seem excessive to another while simultaneously appearing inadequate to a third observer. To the extent that a consensus could be arrived at with respect an amount that would be termed a "reasonable fee" Defendant asserts that since Plaintiff brought this suit based on faulty, flimsy and easily demonstrably false accusations and evidence, and since Plaintiff's attorney took the case and filed the Complaint based on these same faulty, flimsy and easily demonstrably false accusations and evidence, they bear the responsibility of resolving the issue of fees among themselves and thus Defendant denies that this paragraph has any bearing on this case and asserts that the claims made in Paragraph 27 are a moot point.

28. Defendant reasserts every denial made in Respondent's Paragraphs 1 through 27 inclusive and further reasserts every defense raised in Respondent's Paragraphs 1 through 27, inclusive.

29. Defendant denies the allegations in Paragraph 29 and reasserts all previous defenses set forth with respect to Plaintiff's alleged Copyrights-in-Suit.

30. Defendant denies the allegations in Paragraph 30 and reasserts all previous defenses set forth herein with respect to BitTorrent technology, alleged infringer's IP address and Defendant's IP address and Plaintiff's Exhibit B.

31. Defendant denies the allegations in Paragraph 31 and reasserts all previous defenses outline herein.

32. Defendant denies the allegations in Paragraph 32; with regard to the sub-paragraphs with Paragraph 32:

A) Defendant denies the allegations in this sub-paragraph and asserts that there is no evidence to support such a claim.

B) Defendant denies the allegations in this sub-paragraph and reasserts that Plaintiff's Paragraph 20 explicitly states that this never happened.

C) Defendant denies the allegations in this sub-paragraph and reasserts that Plaintiff's Paragraph 20 explicitly states that this never happened.

D) Defendant denies the allegations in this sub-paragraph and reasserts that Plaintiff's Paragraph 20 explicitly states that this never happened.

33. Defendant denies the allegations in Paragraph 33 and reasserts Respondent's Paragraph 2, where it is shown that the IP address of the alleged infringer does not match Defendant's IP address and Defendant maintains that Plaintiff has sued the wrong subscriber.

Defendant also reasserts that Plaintiff's pricing model makes it uneccesary to engage in a 16-month campaign to download 13 movies when for paltry sum of $100 one can get a 1 year unlimited access to 870 of Plaintiff's movies, legally.

A) Defendant denies that such an order is needed or warranted and further asserts that because Plaintiff by their own admission allowed the alleged infringement to continue for 16 months, without seeking any sort of legal remedy available to them, such as a Cease and Desist Order, or a lawsuit as soon as the first alleged infringement occurred, or DMCA notice to the website hosting the required ".torrent" file, Plaintiff granted anybody allegedly infringing any Copyrights that Plaintiff may have, an Implied License to commit the acts alleged herein.

Defendant further asserts that since Plaintiff has admitted in Paragraph 20 that "At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user." then the request for an order of the nature outlined in 33 A) is a moot point since by Plaintiff's own admission the conduct alleged in this paragraph never happened.

B) Defendant denies that such an order is needed and Defendant reasserts all statements made in Respondent's 33 A) to Respondent's 33 B).

C) Defendant denies that such an order is needed and asserts that Defendant fails to see a difference between this paragraph and Plaintiff's Paragraph 33 B) and so reasserts and also applies all statements made in Respondent's 33 A).

D) Defendant denies that Plaintiff is entitled to damages of any nature, for the reasons outlined in all the preceding paragraphs and further alleges that any damages a court did find Defendant liable for should be limited to actual damages. Plaintiff's sell a 1-year subscription for $100 with unlimited downloads, and since the alleged infringement lasted for 16 months totaling 13 movies in total the most Plaintiff can claim to have lost is $150. Defendant further asserts that since he has no interest in Plaintiff's content, he would not have bought the content at any price and thus Plaintiff could only claim to have lost a customer who had no interest in the product they produce.

Plaintiff further reasserts that since the IP address of the alleged infringer does not match the IP address of the Defendant, and since Defendant has shown that for 9 out of the 13 allegedly infringed movies, Plaintiff's investigators could not even accurately determine the date of first publication, the evidence Plaintiff is relying upon is faulty and thus Plaintiff can't prove their prima facie case and are not entitled to a single dime.

E) Defendant denies that Plaintiff is entitled to any fees or costs and reasserts the above paragraph and previously outlined defenses in their entirety.

F) Defendant denies Plaintiff is entitled to any relief and further asserts that Defendant is entitled to a dismissal of the Complaint as well as reasonable compensation for the time and energy Defendant spent in researching this case and preparing this Answer as well as compensation for the stress and anguish caused by these false allegations and associated lawsuit.

Respectfully,

Dated this 21th day of August, 2018

_____
Christos Kambanis